UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

No. 1:21-CV-00744-LCB-JEP

| | | |
|---|---|---|
| KATHY BYRD HARRINGTON, as Administrator of the Estate of WESLEY RANDOLPH HUNTER, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **MEMORANDUM OF LAW IN SUPPORT** |
| SOUTHERN HEALTH PARTNERS, INC. and KELLY CARLTON and KAREN RUSSELL, JASON AUTEN, in his individual capacity, A.M. PRICE, in his individual capacity, MICHAEL ROGERS, in his individual capacity, CABARRUS COUNTY SHERIFF'S DEPARTMENT, and CABARRUS COUNTY, | ) ) ) ) ) ) ) ) ) | **OF PARTIAL MOTION TO DISMISS BY SOUTHERN HEALTH PARTNERS, INC. AND KAREN RUSSELL** |
| Defendants. | ) ) | |

NOW COME the Defendants, Southern Health Partners, Inc. and Karen Russell, and in support of their Partial Motion to Dismiss Plaintiff's Amended Complaint filed pursuant to Rule 12(b)(6), provide the Court with the following Memorandum of Law.

**NATURE OF THE CASE**

Plaintiff, Kathy Byrd Harrington (hereinafter "Plaintiff"), as Administrator of the Estate of Wesley Randolph Hunter (hereinafter "Hunter"), asserts various causes of action related to the alleged deprivation of medical treatment and withdrawal monitoring given to Hunter during his incarceration at the Cabarrus County Detention Center (hereinafter "Jail") from August 12, 2020 to August 21, 2020. On August 18, 2021, Plaintiff filed an initial Complaint in this action in the Superior Civil Court for Cabarrus County, North Carolina. [ECF No. 1-1] This action was

subsequently removed to this Court by Defendants Southern Health Partners, Inc. (hereinafter "SHP"), Karen Russell (hereinafter "P.A. Russell"), and Kelly Carlton (hereinafter "Nurse Carlton") on September 24, 2021, pursuant to the Court's federal question jurisdiction and supplemental jurisdiction. [ECF No. 1]. Defendants SHP, P.A. Russell, and Nurse Carlton timely filed their joint Answer on October 27, 2021. [ECF No. 22].

Plaintiff's Complaint alleges federal law claims of violations of 42 U.S.C. § 1983 and punitive damages, and state law claims of medical malpractice, wrongful death, and punitive damages against all Defendants. Specifically as to SHP, Plaintiff alleges: (1) a 42 U.S.C. § 1983 claim; (2) a North Carolina state law claim for medical negligence and wrongful death; (3) a claim for punitive damages. Specifically as to P.A. Russell, Plaintiff alleges: (1) a North Carolina state law claim for medical negligence and wrongful death; and (2) a claim for punitive damages.

## STATEMENT OF THE FACTS

According to the allegations in Plaintiff's Complaint, on August 12, 2020, Hunter was booked at the Jail on drug-related charges. (Compl. ¶ 20 [ECF No. 1-1]). During his booking process, Hunter disclosed that he had been exposed to COVID-19; therefore, he was placed in medical isolation. (Compl. ¶ 21 [ECF No. 1-1]). Also during booking, Hunter disclosed that he suffered from opioid addiction, and was experiencing withdrawal symptoms. (Compl. ¶ 22 [ECF No. 1-1]). Hunter also disclosed that he suffered from hypertension, which was being treated with medication. (Compl. ¶ 23 [ECF No. 1-1]).

On or about August 14, 15, 16, and 17, 2020, Hunter reportedly suffered multiple episodes of vomiting and/or diarrhea. (Compl. ¶ 24 [ECF No. 1-1]). On August 20, 2020, at or

2

around 8:30 a.m., Hunter complained of dizziness and was helped to a chair by detention officers. (Compl. ¶ 25 [ECF No. 1-1]).

At or about 7:00 p.m. on August 20, 2020, Hunter lost consciousness in the shower, which caused a laceration to his chin. (Compl. ¶ 26 [ECF No. 1-1]). Nurse Carlton examined Hunter at this time. (Compl. ¶ 26 [ECF No. 1-1]). Nurse Carlton requested that Hunter move out of the shower; because Hunter was too weak to stand, the detention officers laid Hunter on the floor outside of the shower. (Compl. ¶ 27 [ECF No. 1-1]). Nurse Carlton administered an ammonia tablet to Hunter, and instructed that Hunter should be moved back to his cell, where his mattress was moved to the floor. (Compl. ¶¶ 28-29 [ECF No. 1-1]).

On August 21, 2020, at or about 8:35 a.m., a detention officer requested a medical check for Hunter because Hunter was allegedly experiencing a seizure. (Compl. ¶ 30 [ECF No. 1-1]). Nurse Carlton came to examine Hunter, and Hunter indicated to Nurse Carlton that he had an extreme headache. (Compl. ¶ 30 [ECF No. 1-1]). On August 21, 2020, on or about 9:30 a.m., a detention officer requested a medical check on Hunter because he was lying on his left side and indicated that he was having difficulty sitting up. (Compl. ¶ 31 [ECF No. 1-1]). Nurse Carlton came to examine Hunter, and he required assistance to place himself in a sitting position. (Compl. ¶ 31 [ECF No. 1-1]). At this time, Nurse Carlton instructed Hunter to drink plenty of water to avoid dehydration. (Compl. ¶ 32 [ECF No. 1-1]). Hunter informed Nurse Carlton and the detention officers that he was unable to get up to get water without passing out or falling down. (Compl. ¶ 32 [ECF No. 1-1]). The detention officers issued Hunter a red cup with water. (Compl. ¶ 32 [ECF No. 1-1]).

On August 21, 2020, at or about 3:00 p.m., a detention officer, Officer Rogers, observed that Hunter was slumped over the toilet without a shirt and was not breathing. (Compl. ¶ 33

3

[ECF No. 1-1]).  An unidentified liquid substance was observed under Hunter.  (Compl. ¶ 33 [ECF No. 1-1]).  Officer Rogers called the control room for assistance. (Compl. ¶ 33 [ECF No. 1-1]).  Another detention officer, Officer Price, responded to Officer Rogers' request, and observed Hunter unconscious, slumped over the toilet with his head against the cell wall. (Compl. ¶ 34 [ECF No. 1-1]).  Officer Price retrieved his medical bag, and Hunter was placed with his back on the floor.  (Compl. ¶ 34 [ECF No. 1-1]).  Nurse Carlton was summoned to Hunter's jail cell at this time.  (Compl. ¶ 34 [ECF No. 1-1]).  Allegedly, Hunter died on August 21, 2020 due to internal bleeding from laceration in his gastroesophageal junction.  (Compl. ¶ 34 [ECF No. 1-1]).

## ARGUMENT

Upon a Motion to Dismiss pursuant to Rule 12(b)(6), the court must determine whether a plaintiff's complaint sufficiently pleads a claim for which relief can be granted.  *Edwards v. City of Goldsboro*, 178 F.3d. 231, 243 (4th Cir. 1999).  In order to survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts "to state a claim [for] relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  Upon a Rule 12(b)(6) motion, the court will accept all well-pled facts as true and construe them in the light most favorable to the plaintiff, but the court will not consider legal conclusions, elements of a cause of action, and bare assertions devoid of fact.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Applying this standard, Plaintiff has failed to allege sufficient facts supporting a valid 42 U.S.C. § 1983 claim for failure to provide medical care and treatment against SHP under a theory of *respondeat superior*.  Additionally, Plaintiff has failed to allege facts supporting a valid federal law claim or state law claim for punitive damages against SHP.

4

I. **PLAINTIFF IMPROPERLY ALLEGES A 42 U.S.C. § 1983 CLAIM FOR THE FAILURE TO PROVIDE MEDICAL CARE AND TREATMENT AGAINST SHP UNDER A THEORY OF *RESPONDEAT SUPERIOR*.**

42 U.S.C. § 1983 allows a person who is deprived of a constitutional right to bring an action against a violating individual who acted under color of law. *See* 42 U.S.C. § 1983. Both individuals acting in their official capacity and local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A local government or municipality may not be held liable under § 1983 for an injury inflicted solely by its employees or agents, under a theory of *respondeat superior*. *Monell*, 436 U.S. at 691, 694. *See also City of Canton v. Harris*, 489 U.S. 378, 387 (1989) (holding that a city cannot be automatically liable under § 1983 if one of its employees happened to apply a city policy in an unconstitutional manner, as liability would then rest under a theory of *respondeat superior*).

The Fourth Circuit Court of Appeals has held that the principles of municipal liability under § 1983, as articulated in *Monell* and cases following it, apply equally to private corporations; specifically, a private corporation cannot be held liable under § 1983 for torts committed by employees when such liability is predicated upon a theory of *respondeat superior*. *Austin v. Paramount Parks, Inc.*, 195 F.3d. 715, 727-28 (4th Cir. 1999). *See also Powell v. Shopco Laurel Co.*, 768 F.2d. 504, 506 (4th Cir. 1982) (noting that the Supreme Court held that a municipal corporation cannot be saddled with § 1983 liability under a theory of *respondeat superior* alone, and further holding that this was equally applicable to the liability of private corporations).

In her Complaint, Plaintiff appears to allege her § 1983 claim for deliberate indifference against SHP under two theories: (1) a theory of *respondeat superior*, for the actions of its

5

employees or independent contractors at the Jail that might constitute deliberate indifference; and (2) a theory that a policy, practice or custom directly caused SHP's employees or agents at the Jail to be deliberately indifferent. (*See* Compl. ¶¶ 45-51 [ECF No. 1-1]). Thus, at least in part, Plaintiff is relying on the theory of *respondeat superior* to make a § 1983 claim for deliberate indifference against SHP, for acts allegedly committed by a SHP employee or independent contractor. (*See* Compl. ¶¶ 46-49 [ECF No. 1-1]). Because a corporation cannot be held vicariously liable under § 1983 for the acts of its employees, Plaintiff may not assert a § 1983 claim against SHP for the alleged deliberate indifference of SHP's employees or independent contractors. Therefore, in so far as Plaintiff alleges a § 1983 claim of deliberate indifference against SHP under a theory of *respondeat* superior, such claim should be dismissed pursuant to Rule 12(b)(6).

## II. PLAINTIFF'S CLAIMS AGAINST SHP FOR PUNITIVE DAMAGES FAILS UNDER BOTH FEDERAL AND STATE LAW.

### A. Plaintiff's federal law claim for punitive damages, based on her claim under 42 U.S.C. § 1983, fails because the principles of municipal liability apply to SHP.

Generally, punitive damages are recoverable in § 1983 actions "for conduct that involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987). However, the Supreme Court of the United States has stated that "[a] municipality is immune from punitive damages under 42 U.S.C. § 1983," as it "can have no malice independent of its officials." *Newport v. Fact Concerts*, 452 U.S. 247, 267, 271 (1981) ("The deterrence rationale of § 1983 does not justify making punitive damages available against municipalities."). As stated in Part I, the Fourth Circuit Court of Appeals has held that the principles of municipal liability under §

1983, as articulated in *Monell* and cases following it, apply equally to private corporations. *See Austin v. Paramount Parks, Inc.*, 195 F.3d. 715, 727-28 (4th Cir. 1999).

To the extent Plaintiff attempts to allege a claim for punitive damages against SHP under § 1983, Plaintiff's claim is improper. As SHP is a private corporate entity that employs health care personnel to provide medical care at detention facilities, and as the principles of municipal liability under § 1983 apply to private corporations, punitive damages should not be awarded against SHP pursuant to § 1983. Therefore, Plaintiff's claim for punitive damages under § 1983 against SHP inherently fails, and should be dismissed pursuant to Rule 12(b)(6).

> **B.** **Plaintiff's state law claim for punitive damages fails for lack of allegations that the officers or managers of SHP condoned or participated in any egregious conduct.**

N.C. Gen. Stat. § 1D-15 states that, in order to be awarded punitive damages, a plaintiff must present clear and convincing evidence that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages will be awarded: (1) fraud; (2) malice; or (3) willful and wanton conduct. N.C. Gen. Stat. § 1D-15(a)-(b) (2015). Even where sufficient facts are alleged to make out an identifiable claim of negligence, the negligent conduct must be accompanied by some element of aggravation for punitive damages to be allowed. *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 112, 229 S.E.2d 297, 301 (1976). "[A] plaintiff's complaint <u>must</u> allege facts or elements showing the aggravating circumstances which would justify the award of punitive damages." *Hart v. Brienza*, 246 N.C. App. 426, 435, 784 S.E.2d 211, 218 (2016) (quoting *Shugar v. Guill*, 304 N.C. 332, 336, 283 S.E.2d 507, 509 (1981) (emphasis in original)), *review denied*, 793 S.E.2d 223, 2016 N.C. LEXIS 841 (2016).

7

Punitive damages will not be awarded against a corporate defendant solely on the basis of vicarious liability for the acts or omissions of an employee.  N.C. Gen. Stat. § 1D-15(c).  In order to allege a claim of punitive damages against a corporate defendant, a plaintiff must allege facts showing that the "officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages."  § 1D-15(c). Where a plaintiff does not adequately allege that a specific officer or manager of a corporation directed employees to engage in or condoned the actions of the employees engaging in the alleged egregious conduct, then the plaintiff has not sufficiently alleged facts supporting a claim for punitive damages against the corporation.  *See, e.g.*, *In re Brokers, Inc.*, No. 04-53451, 2008 Bankr. LEXIS 744 at *7-8 (Bankr. M.D.N.C. Mar. 4, 2008) (holding that the plaintiff had adequately alleged a punitive damages claim against a corporation with new shareholders, where the plaintiff specifically alleged that the previous shareholder-officer of the corporation directed current employees of the corporation to engage in the alleged egregious conduct).

No court in North Carolina has held that punitive damages are proper as against a hospital or health care provider for the acts or omissions of a doctor who heads the treatment team for a specific practice area within the hospital.  *See Barringer v. Forsyth Cty. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. 238, 260, 677 S.E.2d 465, 480, *writ denied*, *review denied* sub nom. *Barringer v. Wake Forest Univ. Baptist Med. Ctr.*, 363 N.C. 651, 684 S.E.2d 690 (2009).  In *Barringer*, the court held that, even if a doctor's action amounts to the required aggravating factor under § 1D-15, the hospital is still not liable for punitive damages under North Carolina law.  *Id.*, 677 S.E.2d at 480.  The court stated that no court in North Carolina has held that "a physician who is head of a treatment team is tantamount to a manager" for a claim of punitive damages against a corporate hospital.  *Id.*, 677 S.E.2d at 480.  Therefore, the actions of

the doctor in that case were not considered to be acts of a manager, officer, or director "participating in or condoning" conduct that constituted an aggravating factor under § 1D-15(c). *Id*., 677 S.E.2d at 480.

In this case, Plaintiff has made no legal or factual allegations that a corporate officer, manager, or supervisor of SHP either directly participated in or condoned any acts by SHP employees that were fraudulent, malicious, or willful and wanton. Even if Plaintiff had actually made allegations that some individual employed or contracted by SHP at the Jail should be considered a corporate officer, manager, or supervisor of SHP during the events at issue, Plaintiff would not have a legal basis for such an assertion, as a doctor or head of a treatment team is not tantamount to a manager of a hospital or healthcare provider. Moreover, by the very language in Plaintiff's Complaint, no physician or head of the treatment team at the Jail was consulted about the treatment of Hunter. (*See* Compl. ¶¶ 26, 30-31, 33-34 [ECF No. 1-1]).

Regardless, Plaintiff has not alleged any manager or supervisor of SHP directly participated in or condoned the alleged failure to provide medical services; thus, Plaintiff's claim for punitive damages against SHP impliedly relies on an invalid theory of vicarious liability for the acts of SHP's employees at the Jail. Therefore, Plaintiff's state law claim for punitive damages against SHP inherently fails, and should be dismissed under Rule 12(b)(6).

## III. PLAINTIFF FAILS TO PROPERLY ALLEGE ANY CLAIM AGAINST P.A. RUSSELL.

Rule 8(a)(2) requires that a plaintiff make a short and plain statement of the claim showing that the plaintiff is entitled to relief, in order to give the defendant a fair notice of what the claim is and the grounds it rests upon. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). Rule 8(a)(2) requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. *Id.* Instead, a complaint must contain factual

Case 1:21-cv-00744-LCB-JEP   Document 25   Filed 12/14/21   Page 9 of 15

allegations sufficient to raise a right to relief above the speculative level. *Id.* Essentially, a complaint must have sufficient factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570.

In keeping with the principles of Rule 8(a)(2), a plaintiff must make factual allegations <u>as to each defendant</u> describing how their actions or failure to act violated his rights. *Harris v. Barnes*, No. 1:09-CV-726, 2009 U.S. Dist. LEXIS 101654, at *1 (M.D.N.C. Oct. 26, 2009) (emphasis added); *see also Manning v. Dva Well Path Correct Care Solutions*, No. 1:20-CV-8, 2021 U.S. Dist. LEXIS 56370, at *7-8 (M.D.N.C. Mar. 25, 2021) (holding that the plaintiff failed to state a claim against the corporate health care provider, because the plaintiff failed to include any factual allegations against the corporate healthcare provider, referring only to "the medical staff" and "the nurses").

In this matter, Plaintiff has failed to assert any factual allegations in her complaint that raise a right to relief against P.A. Russell under any of the claims asserted. Therefore, all claims against P.A. Russell should be dismissed, with prejudice.

A. **Plaintiff fails to sufficiently allege a claim for medical negligence and wrongful death against P.A. Russell.**

A medical malpractice action is "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2)(a). "Professional services" has been defined by North Carolina courts as an act or service involving specialized knowledge, labor or skill, or which involves a medical assessment or clinical judgment; medical orders or clinical decisions made by health care providers in the course of providing care to patients are acts done as part of professional medical services. *Gause v. New Hanover Reg'l Med. Ctr.*, 251 N.C. App. 413, 418, 795 S.E.2d 411, 415 (2016). Thus, where a

party's negligence claim is based solely upon a medical decision of a healthcare provider that requires clinical judgment and intellectual skill, then it is clear that that claim of negligence is based upon medical malpractice and not upon ordinary negligence. *Sturgill v. Ashe Mem'l Hosp, Inc.*, 186 N.C. App. 624, 628-30, 652 S.E.2d 302, 305-06 (2007).

To the extent a Plaintiff alleges a claim of negligence and/or medical malpractice against a healthcare provider, the plaintiff must show "(1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff." *Weatherford v. Glassman*, 129 N.C. App. 618, 621, 500 S.E.2d 466, 468 (1998).

In this action, Plaintiff's medical negligence and wrongful death claim is asserted against the Defendants, collectively. (*See* Compl. ¶¶ 53-66 [ECF No. 1-1]). However, Plaintiff has failed to make any allegations supporting a medical malpractice claim against P.A. Russell, outside of a blanket assertion of the applicable standard of care and a legal conclusion that all defendants breached their duties to Hunter. (*See* Compl. ¶¶ 62-65 [ECF No. 1-1]). Importantly, there are <u>no factual allegations</u> which mention P.A. Russell or assert specific acts or omissions by P.A. Russell in the treatment of Hunter at the Jail. Plaintiff fails to allege facts supporting her allegation that P.A. Russell, specifically, breached the standard of care as a healthcare provider, and fails to allege facts supporting her conclusion that some act or omission by P.A. Russell, specifically caused Hunter's injuries and/or wrongful death.

In fact, P.A. Russell is mentioned by name only <u>two</u> times in the Complaint: (1) in a jurisdictional allegation identifying P.A. Russell as a physician assistant licensed in North Carolina, and assigned by SHP as the Jail's medical director during the period at issue; (2) in a paragraph alleging that P.A. Russell and Nurse Carlton, to the extent they are health care

11

providers, had a duty to care for Hunter in accordance with the standards of practice among members of the same health care profession, a duty to exercise reasonable cause and diligence in treating Hunter, and a duty to use their best judgment in the treatment of Hunter. (Compl. ¶¶ 4, 62 [ECF No. 1-1]). There are no factual allegations which mention specific acts or omissions of negligence by P.A. Russell in the treatment of Hunter at the Jail. Plaintiff merely asserts that the Defendants, collectively, were negligent in a myriad of ways, none of which are specific to P.A. Russell. (*See* Compl. ¶ 53 [ECF No. 1-1]).

Thus, Plaintiff fails to set forth any factual allegations that establish a claim of medical malpractice and wrongful death against P.A. Russell that can be considered sufficient under the requirements of Rule 8(a)(2). Therefore, because Plaintiff has failed to state a claim of medical malpractice against P.A. Russell, Plaintiff's claim should be dismissed.

### B.     Plaintiff's claim against P.A. Russell for punitive damages fails.

As stated above, N.C. Gen. Stat. § 1D-15 states that, in order to be awarded punitive damages, a plaintiff must present clear and convincing evidence that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages will be awarded: (1) fraud; (2) malice; or (3) willful and wanton conduct. N.C. Gen. Stat. § 1D-15(a)-(b) (2015). Even where sufficient facts are alleged to make out an identifiable claim of negligence, the negligent conduct must be accompanied by some element of aggravation for punitive damages to be allowed. *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 112, 229 S.E.2d 297, 301 (1976). "[A] plaintiff's complaint <u>must</u> allege facts or elements showing the aggravating circumstances which would justify the award of punitive damages." *Hart v. Brienza*, 246 N.C. App. 426, 435, 784 S.E.2d

211, 218 (2016) (quoting *Shugar v. Guill*, 304 N.C. 332, 336, 283 S.E.2d 507, 509 (1981) (emphasis in original)), *review denied*, 793 S.E.2d 223, 2016 N.C. LEXIS 841 (2016).

In this action, Plaintiff fails to establish factual allegations supporting a claim for medical negligence against P.A. Russell, much less a claim for punitive damages. As previously stated, there are no factual allegations made against P.A. Russell in Plaintiff's Complaint to support a claim for medical negligence. Further, aside from a generalized recitation of the elements of a punitive damages claim, there are no specific allegations against P.A. Russell that any of her actions or omissions were willful and wanton, done with malice, or fraudulent. (*See* Compl. ¶¶ 67-70 [ECF No. 1-1]).

As Plaintiff has failed to make any factual allegations supporting her claim for medical negligence and for compensatory damages against P.A. Russell, Plaintiff's claim for punitive damages against P.A. Russell inherently fails. Therefore, Plaintiff's claim for punitive damages against P.A. Russell should be dismissed, with prejudice.

## CONCLUSION

For the reasons stated herein, Plaintiff's 42 U.S.C. § 1983 claim for failure to provide medical treatment under a theory of *respondeat superior* and claims for punitive damages as against Southern Health Partners, Inc. should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Further, Plaintiff's claim for medical negligence and punitive damages against Karen Russell should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

13

This the 14th day of December, 2021.

                              Respectfully submitted,

                              /s/ W. Gregory Merritt
                              N.C. State Bar Number:  23333
                              E-mail:  wgm@harriscreech.com
                              /s/ Christina J. Banfield
                              N.C. State Bar Number:  52015
                              Email:  njb@harriscreech.com
                              Harris, Creech, Ward & Blackerby, P.A.
                              325 Pollock Street
                              P.O. Drawer 1168
                              New Bern, NC  28563-1168
                              Telephone:  (252) 638-6666
                              Facsimile:  (252) 638-3542
                              Attorneys for Defendants Southern Health Partners, Inc.,
                                 Kelly Carlton, and Karen Russell

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS BY SOUTHERN HEALTH PARTNERS, INC. AND KAREN RUSSELL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Fred W. DeVore, III
Email:  fdevore@devact.com
Mr. F. William DeVore, IV
Ms. Brittany Conner
DeVore, Acton & Stafford, P.A.
438 Queens Road
Charlotte, NC 28207
Telephone:  (704) 377-5242
Facsimile:  (704) 332-2825

Mr. James D. (JD) McAlister
Email: jmcalister@mgclaw.com
Mr. Jeffrey Kuykendal
Email:  Jeffrey.kuykendal@mgclaw.com
MGC Insurance Defense
PO Box 30307
Charlotte, NC 28230-0307
Telephone: 704-405-4638
Facsimile: 704-643-2376

This the 14th day of December, 2021.

Respectfully submitted,

/s/ W. Gregory Merritt
N.C. State Bar Number:  23333
E-mail:  wgm@harriscreech.com
/s/ Christina J. Banfield
N.C. State Bar Number:  52015
Email:  njb@harriscreech.com
Harris, Creech, Ward & Blackerby, P.A.
325 Pollock Street
P.O. Drawer 1168
New Bern, NC  28563-1168
Telephone:  (252) 638-6666
Facsimile:  (252) 638-3542
Attorneys for Defendants Southern Health Partners, Inc.,
   Kelly Carlton, and Karen Russell

njb/8582