UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:21CV744

KATHY HUNTER HARRINGTON, as Administrator of the Estate of Wesley Hunter, deceased,

   *Plaintiff,*

v.

SOUTHERN HEALTH PARTNERS, INC, and K. CARLTON and KAREN RUSSELL, J. AUTEN, in his individual capacity, M. PRICE, in his individual capacity, MICHAEL ROGERS, in his individual capacity, CABARRUS COUNTY SHERIFF'S DEPARTMENT, and CABARRUS COUNTY,

   *Defendants.*

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SOUTHERN HEALTH PARTNERS, INC. AND KAREN RUSSELL'S PARTIAL MOTION TO DISMISS**

NOW COMES THE PLAINTIFF, by and through undersigned counsel, tendering this Memorandum in Opposition to Defendant Southern Health Partners, Inc. (hereinafter "Southern Health Partners" or "SHP") and Karen Russell's (hereinafter "Russell") (collectively "moving Defendants" or "Defendants") Rule 12(b)(6) Motion to Dismiss.

## SUMMARY OF THE FACTS

On 12 August 2020, Wesley Hunter was placed into the Cabarrus County Jail on drug related charges and was thus under the medical care of SHP. (Doc. 1-1 at ¶ 11). Since the year 2000 and continuing until today, Cabarrus County has a contract with SHP to deliver all medical, mental health and dental services to inmates of the Cabarrus County Jail. (Doc. 1-1 at ¶ 11). SHP was to provide a licensed physician to be the Medical Director of the medical services provided at the jail, but no physician was assigned to the Cabarrus County Jail. (Doc. 1-1 at ¶ 14). During his intake into the jail,

Hunter disclosed that he had been exposed to the Covid-19 virus and thus was placed in medical isolation. (Doc. 1-1 at ¶ 21). Hunter also disclosed that he suffered from Opioid addiction and was experiencing severe withdrawal symptoms, including violent vomiting and uncontrollable diarrhea. (Doc. 1-1 at ¶ 22). Hunter also suffered from hypertension which was being treated by medication. (Doc. 1-1 at ¶ 23).

On or about August 14, 15, 16, and 17, 2020, Hunter reported multiple severe episodes of vomiting and/or diarrhea. (Doc. 1-1 at ¶ 24). On or about 20 August 2020, at 8:30 AM, Hunter complained of dizziness and had to be helped to a chair by employees and/or agents of Cabarrus County Sherriff's Department ("jailers"). (Doc. 1-1 at ¶ 25). At approximately 7:00 PM on the same day, Hunter lost consciousness in the shower and fell causing a laceration to his chin. (Doc. 1-1 at ¶ 26). He was examined by Defendant Carlton, but no physician's consult was attempted. *Id*.

After regaining consciousness, Defendant Carlton requested Hunter move outside of the shower. (Doc. 1-1 at ¶ 27). Hunter was too weak to stand and continued to pass out. Jailers laid Hunter on the floor outside of the shower. *Id.* Defendant Carlton administered an ammonia tablet and directed that Hunter be placed back in his cell and his condition was treated by putting his mattress on the floor. (Doc. 1-1 at ¶ 28,29).

On 21 August 2020, at approximately 8:35 AM, a jailer requested a medical check on Hunter because Hunter was experiencing a seizure. (Doc. 1-1 at ¶ 30). When the seizure subsided, Hunter indicated to the Defendant Carlton, that he was experiencing an extreme headache. *Id*. Carlton examined Hunter, but did not seek a consultation with a physician. *Id*. On 21 August 2020, at approximately 9:30 AM, a jailer requested a

2

medical check on Hunter because he was found lying on his left said and could not sit up. (Doc. 1-1 at ¶ 31).

At the same time, Carlton instructed Hunter to drink plenty of water to avoid dehydration. *Id.* Hunter informed Carlton and jailers that he was unable to get water without passing out or falling down. *Id.* Jailers issued a red cup with water and gave it to Hunter. (Doc. 1-1 at ¶ 32). No other help hydrating was provided. No medical treatment was administered. No additional monitoring was ordered. *Id.*

On the same day, at approximately 3:00 PM, Defendant M. Rogers, observed Hunter slumped over the toilet without a shirt, with no signs of breathing, and what was later to be determined to be blood under Hunter. (Doc. 1-1 at ¶ 33). Jailer Rogers did not seek a consultation with a physician, but instead called the control room for assistance. *Id.* Defendant Price responded to Rogers' request and observed Hunter unconscious, slumped over the toilet with his head against the cell wall, blood spatter near his head, and bodily fluids across the floor. (Doc. 1-1 at ¶ 34). Defendants Rogers nor Price sought a consultation with a physician. *Id.* Instead, Defendant Price retrieved his medical bag and Hunter was placed on his back on the floor, where blood was observed coming out of Hunter's mouth and nose. *Id.* Still, Defendants did not seek a consultation with a physician. *Id.* When Carlton finally arrived at Hunter's cell, Hunter was deceased. (Doc. 1-1 at ¶ 35). Hunter internally bled to death from a laceration of the gastroesophageal junction caused by the violent vomiting. (Doc. 1-1 at ¶ 36).

# ARGUMENT

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the Defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) "[W]hen ruling on a Defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

A complaint must be liberally construed, and the Court should not dismiss the complaint unless it appears beyond a doubt that the Plaintiff could not prove any set of facts to support his claim which would entitle him or her to relief. *Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000). In a close case, a motion to dismiss should be denied. *See, Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970).

Here, the moving Defendants breached the non-delegable legal duty that they owed to Wesley Hunter, and Defendants' Motions are simply an attempt to sidestep their non-delegable duty.

## I. DEFENDANTS ARE NOT ENTITLED TO DISMISSAL

### A. Plaintiffs Properly Alleged Policy and Custom Against SHP.

Defendants' main argument in their motion to dismiss Plaintiff's 42 U.S.C. § 1983 claim is that Plaintiff alleged a failure to provide medical care solely under a theory of *respondeat superior* (Doc. 25, Pg. 5). However, the Plaintiff's allegations were as follows:

> 49. SHP and/or its employees or agents knew or should have known that taking no action and/or insufficient action could result in the rapid and permanent deterioration of Hunter's health and even his death.
>
> 50. At all times relevant to this Complaint, it was SHP's widespread custom, policy and/or practice and/or procedure to outright deny medical treatment of or be deliberately indifferent to the serious medical needs of plaintiff and other prisoners/detainees incarcerated with the Cabarrus County Jail system who had serious and expensive medical problems.
>
> 51. As a direct and proximate result of SHP's institutional outright denial of medical treatment and/or deliberate indifference towards Hunter's serious medical needs, Hunter suffered great physical injury, pain, discomfort and mental anguish in violation of Hunter's Eighth and Fourteenth Amendment rights

(Doc. 1-1 at ¶ 49-51).

Consistent with the holdings cited by the Defendants and the cases identified below, Plaintiff fulfilled the § 1983 standards upheld in *Monell, Austin,* and *Powell* by specifically alleging that the Defendants had a widespread custom policy and practice for being deliberately indifferent to the serious medical needs of inmates. *Monell v. Dep't of Soc. Servs.,* 436 U.S. at 691, 694 (1978)*, Austin v. Paramount Parks, Inc.,* 195 F.3d. 715, 727-28 (1999), *See also, Powell v. Shopco Laurel Co.*, 768 F.2d. 504, 506 (1982).

In *Austin*, the Court held that "under *Monell* and its progeny, a municipality is subject to § 1983 liability when 'it causes such a deprivation through an official *policy* or *custom*.'" *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (1999). *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (emphasis added). That analysis was then properly applied and carried over to private corporations in many subsequent Fourth Circuit cases, not the least of which was a recent decision in the Eastern District of North Carolina involving Southern Health Partners (the named Defendant in this case). *Anderson v. Southern Health Partners, Inc.*, 2020 U.S. Dist. LEXIS 200147, *10, 2020 WL 6326098 (slip opinion)[1]. *See, also Clark v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 316 F.App'x 279, 282 (2009).

"As noted above, the Fourth Circuit has determined that the principles of § 1983 municipal liability apply equally to a private corporation that contracts with a municipality." *Id., See also, Austin,* 195 F.3d at 727-728 (1999). In this most recent *Anderson* case against Southern Health Partners, the Fourth Circuit based its dismissal of Plaintiff's § 1983 claims solely on the fact that the Plaintiff asserted no allegations of policy or custom against Southern Health Partners, nor did any of the facts support a policy or custom argument against Southern Health Partners. *Id.* Relying on the holding in *Anderson*, the Plaintiff properly pled the necessary allegations of policy and custom against the Defendants, including Southern Health Partners.

---

[1] Exhibit B.

Although Plaintiff contends that he has properly pled policy and custom, the United States Supreme Court has also recognized that when a Plaintiff cannot prove that an entity has an official policy of not caring for its inmates, such custom may be implied.

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). In this case, the actions of Russell and SHP were so egregious and contained multiple examples of deliberate indifference such that custom can be implied from the actions of the Defendants. *Id*.

In *Tobias v. Phelps*, 144 Mich. App 272, 277-278; 375 NW2d 365 (1985), the Court stated:

> A medical need is serious if it is one that has been diagnosed by a physician as requiring treatment or it is so obvious that even a lay person would recognize the necessity of medical attention. To have acted with "deliberate indifference", defendants must have either intentionally denied or unreasonably delayed treatment of a discomfort-causing ailment or willfully failed to provide prescribed treatment without medical justification.

Attached hereto as Exhibit A is a copy of the health services contract between SHP and Cabarrus County which is referenced in Paragraphs 11-16 of the Complaint (Doc. 1-1 at ¶ 11-16)[2]. Section 1.2 of that contract provides:

> SHP shall provide on a regular basis, at its own cost all professional medical, mental health, dental, and related health care and administrative services for the inmates, regularly scheduled sick call. nursing care, regular physician care. hospitalization, medical specialty services, emergency medical care, emergency ambulance services when medically necessary. . .

*Id.*

Section 1.4 provides: "SHP shall provide, at its own cost, emergency medical care, as medically necessary, to inmates through arrangements to be made by SHP." *Id.* It is clear by the contract itself that SHP is required to provide the jail with all medical treatment services for its inmates and a deliberate and willful and wanton failure to do so amounts to a constitutional violation based on the above, the case law, and the totality of the circumstances in this case.

Section 3.1 of Exhibit A requires SHP to maintain medical records in accordance with the National Commission on Correctional Health Care ("NCCHC"). There are large gaps in the medical records and inexplicable entries in the jail logs. For example, the progress notes reflect that Hunter died at 3:45 PM on August 21, 2020 but the jail logs indicate that someone checked on Hunter 12 times after he was already deceased! (Doc. 1-1 at ¶ 34; 53)[3].

---

[2] This 2007 contract was periodically renewed to adjust contract pricing.
[3] This documentation was produced by Defendants and generally alleged in the Complaint.

8

There is also a statutory duty to provide emergency care to inmates. N.C. Gen. Stat. § 153A-224(b) states: "(b) In a medical emergency, the custodial personnel shall secure emergency medical care from a licensed physician according to the unit's plan for medical care. If a physician designated in the plan is not available, the personnel shall secure medical services from any licensed physician who is available. . . .". *Id*. Subsection (c) of the statute states that anyone who violates this directive is guilty of a Class 1 misdemeanor. *Id.* At a minimum, the Plaintiff pled enough violations against the named Defendants to withstand a motion to dismiss.

B. Punitive Damages Were Properly Pled.

The Defendants next argument is for a dismissal of Plaintiff's punitive damages claims based on *Newport v. Fact Concerts*, 452 U.S. 247 (1981). However, that argument is misplaced. The Plaintiff in the present case has alleged punitive damages against these Defendants as defined in Chapter 1D of the North Carolina General Statutes. Doc. 1-1 at ¶ 66-70. *See,* N.C.G.S. § 1D-1, § 1D-5, § 1D-15 (2015). Plaintiff's allegations for punitive damages are separate and apart from his § 1983 claim, and Plaintiff is alleging that SHP maliciously participated and/or condoned willful and wanton conduct against the Plaintiff, including but not limited to: (a) their pervasive practice of failing to assign a physician to Cabarrus County Jail, (b) the fact that the Defendants saw an inmate with blood and bodily fluids pooling out of Hunter and failed to contact a physician, (c) the Defendants failed to respond to an emergency situation, and (d) other malicious and/or wanton actions and inaction that led to Mr. Hunter's

9

ultimate death. (Doc. 1-1 at ¶¶ 20-36).[4] As such, the Plaintiff respectfully requests that the Defendants' motion be denied.

While it is true that the standard for awarding punitive damages is one of clear and convincing evidence, discovery in this case has not yet begun, and Plaintiff has not yet been afforded the opportunity to prove his allegations against the named Defendants. N.C. Gen. Stat. § 1D-15(a)-(b) (2015). The Complaint, on its face, as identified more specifically above, clearly sets out allegations of malice and willful and wanton conduct against the named Defendants which resulted in the death of the Plaintiff. *Id*.

C. Defendants Had a Non-Delegable Duty

The United States Supreme Court has held that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins*, 487 U.S. 42, 56 (1988). The North Carolina Supreme Court noted that the Eighth Amendment to the U.S. Constitution imposes a broad duty to provide "adequate medical care" to inmates, allowing deliberate breaches of that duty to be brought as § 1983 claims and less egregious, negligence breaches to be actionable against the state in tort. *Whitney v. Albers*, 475 U.S. 312, 319 (1976); *Estelle v. Gamble*, 429 U.S. 91, 107 (1976); *West*, 487 U.S. at 56). Since N.C. Const. art. I, § 27 provides a similar, even more broad prohibition than the Eighth

---

[4] It should be noted that said allegations were made against both Southern Health Partners and Karen Russell, in her individual capacity, based on the limited information that has currently been provided to the Plaintiff voluntarily by the Defendants. The Plaintiff needs the opportunity to conduct discovery to know the extent of Russell's involvement in the willful and wanton conduct.

10

Amendment to the U.S. Constitution, the Supreme Court of North Carolina held that "[o]ur state constitutional provision emphasizes the importance of this interest." *Medley v. N. Carolina Dep't of Correction*, 330 N.C. 837, 844, 412 S.E.2d 654, 659 (1992).

After a thorough review of the codes, statutes, and both the state and federal Constitutions, the North Carolina Supreme Court held that:

> . . . the duty to provide adequate medical care to inmates, imposed by the state and federal Constitutions, and recognized in state statute and caselaw, is such a fundamental and paramount obligation of the state that the state cannot absolve itself of responsibility by delegating it to another.

*Id.* Recently, the Court of Appeals confirmed that the duty to provide health services to inmates has a constitutional basis which the State and the named Defendants cannot escape by delegating. *See, Leonard v. Bell*, 254 N.C. App., 803 S.E.2d 445, 450 (2017). This same theory is why the Defendants *respondent superior* argument fails.

The North Carolina Court of Appeals has previously held in a situation less grave than the instant case that a jury is permitted to decide the issue of deliberate indifference *even if treatment is merely delayed.* In *Boyd v. Robeson Cnty.*, 169 N.C. App. 460, 621 S.E.2d 1 (2005), the plaintiff complained of severe pain, vomiting and nausea for two days. *Id.* at 462-4, 621 S.E.2d at 3-4. Plaintiff's requests for attention were acknowledged on the third day and she received an emergency appendectomy. *Id.* Despite providing plaintiff with treatment by a medical doctor and after successful surgery, the Court held that plaintiff asserted a viable Eighth Amendment claim. *Id.* at 482, 621 S.E.2d at 14-15.

> The fact that plaintiff may have received some care—including emergency surgery when, as she contends, her requests for medical

11

Case 1:21-cv-00744-LCB-JEP   Document 27   Filed 01/04/22   Page 11 of 17

> assistance were finally acknowledged —does not relieve defendants from their responsibility to obtain care for plaintiff during those two days. *See, Sherrod,* 223 F.3d 605, at 611–12[5] ("[A] prisoner is not required to show that he was literally ignored by the staff. If knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference although the prisoner was not 'simply ignored.'"); *McElligott,* 182 F.3d at 1258 ("The fact that [plaintiff] was ultimately hospitalized does not change matters....").
>
> We hold that a reasonable officer in 1998 would have had fair warning that ignoring an inmate's requests for medical care to address severe pain, vomiting, and nausea—over two full days— would, under these circumstances, violate clearly established constitutional law.

*Id.*

Here, treatment was not only delayed, but it was also blatantly refused. Southern Health Partners ignored Hunter's blood work for over a week, refused to provide Hunter a medical doctor assessment, refused to summon EMS until it was too late, and Southern Health Partners refused to timely commence resuscitation procedures. If a jury is permitted to find deliberate indifference in a situation where care was delayed but ultimately provided, it should also be permitted to hear a case where medical care was flatly refused.

Plaintiff also invites the Court to review *Fields v. Southern Health Partners*, 490 F. App'x 174 (11th Cir. 2012)[6], which, while unpublished in the Federal Reporter, shows where another Court has found reckless indifference against Southern Health Partners in a remarkably similar case for failing to treat a desperately sick inmate. Fields was a

---

[5] 223 F.3d 605 (7th Cir. 2000)
[6] Exhibit C.

healthy 24-year-old who had a large bump on his arm from a spider bite, but was otherwise healthy. Mr. Fields developed a staph infection, known as MRSA, that was not properly treated. Fields began to develop uncontrollable twitching in his legs. He collapsed in his cell and was unable to walk. His "hundreds" of attempts to get medical attention went unheeded by Southern Health Partners. Eventually, Fields suffered paralysis. In affirming a jury verdict in favor of the inmate, the Court wrote,

> The Eighth Amendment to the United States Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. amend. VIII. The prohibition against cruel and unusual punishment applies to states under the Fourteenth Amendment. *See, Robinson v. California,* 370 U.S. 660, 666–667, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). . . . For years, courts have recognized that a prison staff's deliberate indifference "to an inmate's serious medical needs violates the inmate's right to be free from cruel and unusual punishment. We have repeatedly held that "deliberate indifference" includes "the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem," where "the delay does seriously exacerbate the medical problem," and where "the delay is medically unjustified. *Harper v. Lawrence Cnty.,* 592 F.3d 1227, 1235 (11th Cir. 2010)

*Fields* at 181.

The omissions and commissions of Southern Health give rise to a claim to a cruel and unusual punishment claim in violation of the Eighth Amendment. In addition, in *Camalier*, the Court stated that a Plaintiff asserting negligence must prove the existence of a legal duty owed to the Plaintiff by the Defendant. *See, Camalier v. Jeffries,* 340 N.C. 699, 460 S.E.2d 133 (1995). State and federal law illustrate that SHP and Russell had a non-delegable duty owed to Wesley Hunter to provide adequate medical care, and Plaintiff has properly pled a violation of that duty.

### D. Contractors Performing County Defendants' Non-Delegable Duty Are County Defendants' Agents

"Where a principal has a non-delegable duty, one with whom the principal contracts to perform the non-delegable duty is as a matter of law an agent for the purposes of applying the doctrine of *respondeat superior*." *Medley* at 845, 412 S.E.2d at 659 (citing *Hendricks v. Leslie Fay, Inc.*, 273 N.C. 59, 62, 159 S.E.2d 362, 366 (1968); *Dockery v. Shows*, 264 N.C. 406, 410, 142 S.E.2d 29, 32 (1965)). By "virtue of the state's non-delegable duty to provide medical care for inmates," an individual, "hired by the state to perform this duty, was at the time of the alleged negligence as a matter of law an agent" of the state. *Medley* at 845, 412 S.E.2d at 659. Thus, the Supreme Court of North Carolina held the state (and in this case county) is liable for an independent contractor doctor's negligence because the state has a non-delegable duty to provide adequate medical care for inmates. *Id.*

Defendants had a duty to provide medical and health care services to those housed at the Cabarrus County Jail. Since the duty was not delegable, anyone with whom Defendants contracted with to perform those services, including but not limited to, Defendant Southern Health Partners, Inc. and its employees, were "agents" of the Defendants. *See, State v. Wilson*, 183 N.C. App. 100, 104, 643 S.E.2d 620, 623 (2007). "It is but just that the public be required to care for the prisoner, who cannot, by reason of the deprivation of his liberty, care for himself." *Spicer v. Williamson*, 191 N.C. 487, 490, 132 S.E. 291, 293 (1926).

14

The Defendants' duty here was non-delegable, and the Plaintiff has properly pled that all of the Defendants have breached their duties owed to the Plaintiff through their policy and custom of ignoring serious inmate medical complaints. As such, the Plaintiff respectfully requests that the Defendants' motion be denied.

## CONCLUSION

For the above reasons, Plaintiff has put forth sufficient evidence to withstand Moving Defendants' Motion to Dismiss. Accordingly, the Court should deny their motion.

This the 4th day of January 2022.

/s/ F. William DeVore, IV
Fred W. DeVore, III – NC State Bar #10308
F. William DeVore, IV – NC State Bar #39633
Brittany N. Conner – NC State Bar # 53913
*Attorneys for Plaintiff*
DeVORE, ACTON & STAFFORD, PA
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
wdevore@devact.com

## **CERTIFICATE OF WORD COUNT**

The undersigned hereby certify that the foregoing memo in opposition to partial motion to dismiss does not exceed 6,250 words and therefore complies with Local Rule 7.3(d)(1) as indicated by the word processing software used to prepare said memo.

This the 4th day of January 2022.

/s/ F. William DeVore, IV _____
Fred W. DeVore, III – NC State Bar #10308
F. William DeVore, IV – NC State Bar #39633
Brittany N. Conner – NC State Bar # 53913
*Attorneys for Plaintiff*
DeVORE, ACTON & STAFFORD, PA
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
wdevore@devact.com

CERTIFICATE OF SERVICE

    I hereby certify that I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| W. Gregory Merritt, NC State Bar 23333<br>wgm@hcwb.net<br>Harris, Creech, Ward & Blackerby, P.A.<br>325 Pollock Street<br>P.O. Drawer 1168<br>New Bern, NC 28563-1168<br>Telephone: (252) 638-6666<br>Attorneys for Southern Health Partners, Inc.,<br>Kelly Carlton, LPN, and Karen Russell, PA | James D. McAlister, NC State Bar 035432<br>jmcalister@mgclaw.com<br>McAngus Goudelock & Courie<br>6302 Fairview Road Ste 700<br>Charlotte, NC 28210-2267<br>Main:704-643-6303\|Direct:704-405-4638<br>Fax:704-643-2376<br>Attorney for Defendants Cabarrus County, Cabarrus County Sheriff's Department, J. Auten, M. Price, and Michael Rogers |

    This the 4th day of January 2022.

    /s/ F. William DeVore, IV_____
Fred W. DeVore, III – NC State Bar #10308
F. William DeVore, IV – NC State Bar #39633
Brittany N. Conner – NC State Bar # 53913
*Attorneys for Plaintiff*
DeVORE, ACTON & STAFFORD, PA
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
wdevore@devact.com

17