IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KATHY BYRD HARRINGTON as Administrator of the Estate of WESLEY RANDOLPH HUNTER, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | 1:21CV744 |
| v. | ) ) ) | |
| SOUTHERN HEALTH PARTNERS, INC., KELLY CARLTON, KAREN RUSSELL, JASON AUTEN, in his individual capacity, A. M. PRICE, in his individual capacity, MICHAEL ROGERS, in his individual capacity, CABARRUS COUNTY SHERIFF'S DEPARTMENT, and CABARRUS COUNTY, | ) ) ) ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Wesley Randolph Hunter died in his cell at Cabarrus County Jail on August 21, 2020. Hunter's mother, Kathy Byrd Harrington ("Plaintiff"), as administrator of Hunter's estate, brings this action against: Southern Health Partners, Inc., a corporation that contracts with Cabarrus County to provide health services at its jail; Kelly Carlton, a licensed nurse employed by Southern Health Partners; Karen Russell, a physician's assistant employed by Southern Health Partners; Jason Auten, A.M. Price, and Michael Rogers, all employees of the Cabarrus County Sheriff's Department; the Cabarrus County Sheriff's Department; and Cabarrus County. Plaintiff alleges violations of 42 U.S.C. § 1983, as well as North Carolina state law claims for medical negligence, wrongful death, and punitive damages. (ECF No. 6.)

Two motions are before the Court. Defendants Jason Auten, A.M. Price, Michael Rogers, Cabarrus County Sheriff's Department, and Cabarrus County bring a Partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 16.) Defendants Southern Health Partners, Inc. and Karen Russell also bring a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 24.) For the reasons stated herein, both motions will be granted.

I.  **BACKGROUND**

On August 12, 2020, Wesley Hunter was placed into the Cabarrus County Jail on drug-related charges. (ECF No. 6 ¶ 20.) According to the Complaint, during Hunter's intake into the jail, he disclosed that he had been exposed to COVID-19. (*Id.* ¶ 21.) As a result, Hunter was placed in medical isolation. (*Id.*) Hunter also disclosed to the jail staff that he suffered from an opioid addiction and was experiencing withdrawal symptoms, including vomiting and diarrhea. (*Id.* ¶ 22.) Around the days of August 14, 15, 16, and 17, 2020, Hunter reported multiple episodes of vomiting and diarrhea. (*Id.* ¶ 24.)

At around 8:30 a.m. on August 20, 2020, Hunter complained of dizziness and was helped to a chair by unidentified employees of the Cabarrus County Sheriff's Department. (*Id.* ¶ 25.) Later that day around 7:00 p.m., Hunter passed out in the shower, which resulted to a laceration to his chin. (*Id.* ¶ 26.) Defendant Nurse Kelly Carlton[1] ("Nurse Carlton") came to examine Hunter. (*Id.*) With the help of unidentified Sheriff's Department employees, Nurse Carlton requested Hunter be moved outside the shower. (*Id.* ¶ 27.) Nurse Carlton administered an ammonia tablet and directed Hunter be returned to his cell. (*Id.* ¶ 28.)

---

[1] Nurse Carlton is a licensed practical nurse employed by Defendant Southern Health Partners, Inc. (ECF No. 6 ¶ 3.) Southern Health Partners is a corporation that provides health services in several jails in North Carolina, including Cabarrus County. (*Id.* ¶ 2.)

The following day, August 21, 2020, at around 8:35 a.m., an unidentified Sheriff's Department employee requested a medical check on Hunter, who was allegedly experiencing a seizure. (*Id.* ¶ 30.) When Hunter came out of the seizure, he told Nurse Carlton that he was experiencing a headache. (*Id.*) Nurse Carlton evaluated Hunter and did not consult with a physician. (*Id.*)

Around an hour later, another medical request was made by an unidentified Sheriff's Department employee after Hunter indicated he was having difficulty sitting up. (*Id.* ¶ 31.) Nurse Carlton examined Hunter another time then instructed him to drink plenty of water to avoid dehydration. (*Id.* ¶ 32.) Hunter told Nurse Carlton and unidentified Sheriff's Department employees that he was unable to get water without passing out. (*Id.*) Unidentified Sheriff's Department employees gave Hunter a cup of water; no other treatment or monitoring was ordered. (*Id.*)

That same day, around 3:00 p.m., Defendant Michael Rogers, a Sheriff's Department jailer, saw Hunter slumped over, not breathing, with bodily fluids around him on the floor. (*Id.* ¶¶ 33–34.) Rogers called for assistance, and Defendant A.M. Price, another Sheriff's Department jailer, responded. (*Id.* ¶ 34.) Price retrieved his medical bag, and Nurse Carlton was called to the jail cell, where she found Hunter deceased. (*Id.* ¶¶ 34–35.) Hunter allegedly died from internal bleeding from a laceration in the gastroesophageal junction. (*Id.* ¶ 36.)

Plaintiff Kathy Harrington, Hunter's mother and administrator of his estate, initiated this action on August 18, 2021, in state court, and Defendants removed to federal court on September 24, 2021. (ECF No. 1.) In Count 1, Plaintiff alleges a claim under 42 U.S.C. § 1983 against Defendants Cabarrus County Sheriff's Department and Cabarrus County. (ECF No. 6 ¶¶ 37–44.) In Count 2, Plaintiff alleges a claim under 42 U.S.C. § 1983 against Defendant

3

Southern Health Partners, Inc. (*Id.* ¶¶ 45–51.) In Count 3, Plaintiff alleges state law negligence claims against all Defendants.[2] (*Id.* ¶¶ 52–66.) Finally, in Count 4, Plaintiff seeks punitive damages against all Defendants. (*Id.* ¶¶ 67–70.)

In the Partial Motion to Dismiss, (ECF No. 16), Defendants Auten, Price, and Rogers seek to dismiss the state law negligence claims brought against them in their individual capacities, while Defendants Cabarrus County Sheriff's Department and Cabarrus County seek to dismiss the § 1983 claim against them. Also, in a Motion to Dismiss, (ECF No. 24), Defendant Southern Health Partners seeks only to dismiss the § 1983 claim against it which rests on a vicarious liability theory, including any related punitive damages claim, and Defendant Karen Russell seeks to dismiss all claims against her. The Court will address each motion in turn.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable

---

[2] The complete list of Defendants is as follows: Southern Health Partners, Inc.; Kelly Carlton, a nurse employed by Southern Health Partners; Karen Russell, a physician's assistant employed by Southern Health Partners; Jason Auten, A.M. Price, and Michael Rogers, all employees of the Cabarrus County Sheriff's Department; the Cabarrus County Sheriff's Department; and Cabarrus County.

4

inferences must be drawn in the non-moving party's favor, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

## III. PARTIAL MOTION TO DISMISS, (ECF NO. 16)

### A. Individual Defendants

Defendants Jason Auten, A.M. Price, Michael Rogers ("Individual Defendants") seek to dismiss Plaintiff's state law claims of negligence against them. (ECF No. 17 at 4.) Individual Defendants assert that they are protected by public official immunity under North Carolina law. (*Id.* at 4–5.)

In North Carolina, public officials "engaged in the performance of governmental duties involving the exercise of judgment and discretion" enjoy immunity from personal liability.[3] *Meyer v. Walls*, 489 S.E.2d 880, 888 (N.C. 1997) (quoting *Smith v. Hefner*, 68 S.E.2d 783, 787 (N.C. 1952)). However, public official immunity may be overcome if it is proven that an officer's conduct was "(1) corrupt; (2) malicious; (3) outside of and beyond the scope of his duties; (4) in bad faith; or (5) willful and deliberate." *Smith v. Jackson Cnty. Bd. of Educ.*, 608 S.E.2d 399, 411 (N.C. Ct. App. 2005) (quoting *Reid v. Roberts*, 435 S.E.2d 116, 119 (N.C. Ct. App. 1993)). "An officer acts with malice when he 'does that which [an officer] of reasonable intelligence would know to be contrary to his duty.'" *Cooper v. Sheehan*, 735 F.3d 153, 160 (4th Cir. 2013) (quoting *Bailey v. Kennedy*, 349 F.3d 731, 742 (4th Cir. 2003)). Thus, "[p]ublic official immunity 'is unavailable to officers who violate clearly established rights.'" *Hensley ex rel. North Carolina v. Price*, 876 F.3d 573, 587 (4th Cir. 2017) (quoting *Bailey*, 349 F.3d at 742).

---

[3] Sheriffs and their deputies are considered "public officers" for the purposes of public official immunity. *See Messick v. Catawba County*, 431 S.E.2d 489, 496 (N.C. Ct. App. 1993); *see also Baker v. Smith*, 737 S.E.2d 144, 151–52 (N.C. Ct. App. 2012) ("[W]e hold that assistant jailers are public officials entitled to immunity because they exercise the power of the State and carry out a statutory duty delegated by one whose position is constitutionally created . . . .").

5

As to Defendant Auten, Plaintiff's Complaint makes no specific mention of him other than where he appears in the caption and where Plaintiff states that Auten is employed by the Cabarrus County Sheriff's Department. (ECF No. 6 ¶ 6.) Plaintiff offers no factual allegations implicating Auten in the care of Hunter at Cabarrus County Jail, nor is it clear from the Complaint if Auten was ever present at the jail at all. Notably, Plaintiff's Memorandum in Opposition to Individual and County Defendants' Partial Motion to Dismiss does not address Auten's claim of public official immunity at all. (ECF No. 21 at 5–7.) Accordingly, Plaintiff has not alleged sufficient facts to demonstrate that Auten was involved in the events related to Hunter at all, let alone that he acted corruptly, maliciously, in bad faith, or in a way that was willfully and deliberately insufficient. For this reason, all claims against Defendant Auten will be dismissed.

As for Defendants Rogers and Price, both were present at the Cabarrus County Jail on the day of Hunter's death. (ECF No. 6 ¶ 33–34.) However, Plaintiff's Complaint provides few facts about their alleged misconduct. The single mention of Rogers concerns the instance where he observed Hunter unconscious in his cell and called for assistance. (*Id.* ¶ 33.) And the only mention of Price is where he was summoned for help by Rogers, and then went to retrieve a medical bag. (*Id.* ¶ 34.) It appears that either Price or Rogers summoned Nurse Carlton at this time too. (*Id.* ¶ 34–35.) Again, Plaintiff's Complaint has failed to allege facts that Rogers or Price acted outside the scope of their duties or in a way that was corrupt, malicious, in bad faith, or willfully and deliberately insufficient.

In her Memorandum in Opposition to this motion, Plaintiff argues that "Rogers and Price's outright failure to call for medical help in what was clearly a medical emergency, was so reckless and manifestly indifferent to Hunter's open and obvious serious and life-

6

threatening medical needs, that a finding of willfulness and wantonness is justified." (ECF No. 21 at 7.) Plaintiff's main contention is that Rogers and Price's decision not to call a physician specifically amounted to deliberate indifference to Hunter's condition, and that they "should have known that their actions regarding Hunter were wanton, done to injure Plaintiff and/or were contrary to their duty to Plaintiff when they failed to provide an appropriate medical response." (*Id.* at 6.) Interestingly, this was not alleged in the Complaint and the Court cannot regard it as such. (ECF No. 6.)

Further, it is difficult to find any factual allegations in Plaintiff's Complaint that support Plaintiff's contention of wantonness. (*Id.* ¶ 33–34); *see also Meyer*, 489 S.E.2d at 890 ("[A] conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss."). Rather, Plaintiff asserts that Rogers did make a call for assistance, Price responded and retrieved a medical bag, and at some point, Nurse Carlton was also summoned. (ECF No. 6 ¶¶ 33–35.) Plaintiff does not allege in her Complaint any facts showing Rogers or Price acted maliciously, corruptly, outside the scope of their official authority, in bad faith, or willfully and deliberately insufficient. Thus, Plaintiff has failed to allege any set of factual allegations sufficient to demonstrate that these Defendants are not entitled to public official immunity. Accordingly, Plaintiff's claims of negligence against Defendants Roger and Price will likewise be dismissed.

B. **County Defendants**

Defendants Cabarrus County Sheriff's Department and Cabarrus County ("County Defendants") only seek to dismiss the federal § 1983 claim against them.[4]

---

[4] County Defendants specify that they are not yet moving to dismiss the state law claims of negligence against them. (ECF No. 17 at 4.)

Municipal liability under § 1983 "is limited to action for which the municipality is actually responsible." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). In other words, "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997). Rather, in order to be held liable, the municipality itself must have generated the "moving force" behind the alleged constitutional violation, either through official policy or widespread and pervasive custom. *See City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989).

In *Lytle v. Doyle*, 326 F.3d 463 (4th Cir. 2003), the Fourth Circuit explained that "[a] policy or custom for which a municipality may be held liable can arise in four ways":

(1) through an express policy, such as a written ordinance or regulation;

(2) through the decisions of a person with final policymaking authority;

(3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or

(4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Id.* at 471 (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). County Defendants contend that the Complaint fails to properly allege municipal liability under any of these theories. (See ECF No. 17 at 8.) This Court will evaluate each theory in turn.

First, Plaintiff does not reference a single written policy of Cabarrus County Sherriff's Department or Cabarrus County in her Complaint. Thus, Plaintiff has not sufficiently pleaded municipal liability under an express-policy theory.

Second, even absent an express written policy, the decisions of a final policymaker can still lead to municipal liability. *See Pembaur*, 475 U.S. at 480–81. Importantly, "not every decision by every municipal official will subject a municipality to section 1983 liability." *Riddick*

8

*v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000). "Rather, '[m]unicipal liability attaches only where the decisionmaker possesses *final* authority to establish municipal policy with respect to the action ordered.'" *Id.* (quoting *Pembaur*, 475 U.S. at 481) (emphasis added). That is because only final policymakers' "edicts or acts may fairly be said to represent official policy." *See id.* (quoting *Monell*, 436 U.S. at 694).

Here, Plaintiff makes no reference to the decision of a final policymaker at either the Cabarrus County Sherriff's Department or Cabarrus County itself. The Complaint contains no allegation of any specific, affirmative policy decisions. Accordingly, the Court finds that Plaintiffs have failed to plead facts with the requisite specificity to support municipal liability under a final-policymaker theory.

Third, the Court will address municipal liability on a failure-to-train theory. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Allegations of mere negligence are insufficient; "only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact" does municipal liability arise. *City of Canton*, 489 U.S. at 388 (emphasis added); *see also Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994). Further, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality], for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390–91. Instead, a plaintiff must allege facts demonstrating that the failure to train "was the result of an affirmative, conscious decision" made with indifference towards a "plainly obvious" potential for constitutional injury. *See Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000) (quoting *City of Canton*, 489 U.S. at 390 n.10).

9

When a plaintiff asserts a claim based on inadequate training, the "complaint should contain facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training." *Peters v. City of Mount Rainier*, No. 14-00955, 2014 WL 4855032, at *5 (D. Md. Sept. 29, 2014) (quoting *Lewis v. Simms*, No. 11-2172, 2012 WL 254024, at *3 (D. Md. Jan. 26, 2012)); *see also, e.g.*, *Cobbs ex rel. Cobbs v. County of Guilford*, No. 10CV806, 2012 WL 3113141, at *4 (M.D.N.C. July 31, 2012), *adopted as modified*, 2012 WL 4508106 (M.D.N.C. Sept. 28, 2012).

Plaintiff has not alleged any of these necessary factors. (ECF No. 6 ¶¶ 37–44.) The closest Plaintiff gets to alleging a failure to train is the allegation that the "Cabarrus County Sheriff's Department and/or its employees or agents knew or should have known that taking no action and/or insufficient action could result in the rapid and permanent deterioration of Hunter's health and even his death." (*Id.* ¶ 43.) However, even this contention does not explicitly mention a failure to train officers on how to respond to inmates' health needs. The only mention of the word "training" in the entire Complaint appears regarding Plaintiff's negligence claims against Defendants Russell and Carlton (both healthcare providers). (*Id.* ¶¶ 62–63.) In sum, the Complaint does not contain sufficient factual allegations supporting each element of a failure-to-train claim.

The final way in which municipal liability may arise is through "a practice [which]," despite having no formal authorization, "is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." *Lytle*, 326 F.3d at 473 (quoting *Carter*, 164 F.3d at 218). To succeed under this theory, a plaintiff must show (1) that the municipality had "'actual or constructive knowledge' of the custom and usage," and (2) that, either with "specific intent or deliberate indifference," its policymakers failed to

10

"correct or terminate the improper custom and usage." *Randall v. Prince George's County*, 302 F.3d 188, 210 (4th Cir. 2002) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987)). Constructive knowledge of such a custom "may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these." *Spell*, 824 F.2d at 1391.

Plaintiff's Complaint makes no references to any specific custom or practice of the Cabarrus County Sheriff's Department or Cabarrus County. Plaintiff's claims against both County Defendants amount to claims of vicarious liability or *respondeat superior*. (ECF No. 6 ¶¶ 39–43.) Accordingly, this warrants dismissal of all § 1983 claims against County Defendants because a "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

For the foregoing reasons, the Court will therefore grant County Defendants' motion to dismiss the § 1983 claims against them.

## IV. MOTION TO DISMISS, (ECF NO. 24)

### A. Southern Health Partners, Inc.

Defendant Southern Health Partners, Inc. seeks to dismiss only part of the federal § 1983 claim against it. Specifically, Southern Health Partners only moves for dismissal on Plaintiff's § 1983 claim premised upon the failure to provide medical care and treatment under a *respondeat superior* theory.[5] (ECF Nos. 25 at 4–5; 30 at 2–3.) Additionally, Southern Health Partners seeks to dismiss Plaintiff's claim for punitive damages. (ECF No. 25 at 5–6.)

---

[5] As outlined in its reply brief, Southern Health Partners does not seek to dismiss Plaintiff's § 1983 claim in its entirety; rather, "[Southern Health Partners] seeks to dismiss Plaintiff's claim under § 1983 only to the extent Plaintiff's claim relies on allegations that the actions or omissions of SHP employees and/or agents are imputed to SHP under a theory of vicarious liability." (ECF No. 30 at 3.)

11

Because Southern Health Partners does not challenge that Plaintiff may have a viable claim under one of the theories of municipal liability outlined above, *supra* Section III.B, the Court need only address whether Plaintiff's § 1983 claim premised upon the failure to provide medical care and treatment can survive a motion to dismiss.

Plaintiff argues in part that Southern Health Partners should be subject to § 1983 liability because "SHP was deliberately indifferent to those serious medical needs in failing to provide the necessary care and treatment of Hunter," (ECF No. 6 ¶ 48), and "SHP and/or its employees or agents knew or should have known that taking no action and/or insufficient action could result in the rapid and permanent deterioration of Hunter's health and even his death," (*id.* ¶ 49). Defendant Southern Health Partners contends that these assertions do nothing more than make *respondeat superior*-type claims which impose liability for the acts of its employees. (ECF No. 25 at 5–6.)

It is well-established that the requirements of *Monell* are "equally applicable to the liability of private corporations" acting under the color of state law. *See Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *see also, e.g.*, *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) ("[W]e see no basis in the reasoning underlying *Monell* to distinguish between municipalities and private entities acting under color of state law."). As earlier discussed, Cabarrus County contracts with Southern Health Partners to provide health services to inmates at the Cabarrus County jail. Such private parties have been found to be acting under color of state law for purposes of § 1983 when fulfilling an obligation or responsibility of the state or, in this case, the county. *West v. Atkins*, 487 U.S. 42, 54–56 (1988).

As made clear by the Supreme Court in *Monell*, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691. Put differently, it is impermissible

to hold a municipality liable "for the actions of subordinate officials." *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 534 (4th Cir. 2022). However, municipal liability can be proper where a Plaintiff seeks to hold the municipality liable for "*its own decision* to uphold the actions of subordinates." *Id.*

Here, Plaintiff's § 1983 claim seeking to impose liability on Southern Health Partners appears to be, at least in part, based on the actions of Southern Health Partners' employees. Plaintiff alleges misconduct for the acts of Southern Health Partner employees, asserting that they knew of Hunter's medical issues and were deliberately indifferent to those needs, and that they should have known taking no action could result in his death. (ECF No. 6 ¶¶ 47–49.) Neither of these contentions point to a decision of Southern Health Partners itself to uphold the actions of subordinates. Accordingly, to the extent that Plaintiff's § 1983 claim against Southern Health Partners is premised upon *respondeat superior* liability, the claim must and will be dismissed. This Court withholds any judgment on whether the Plaintiff has sufficiently alleged a viable claim for municipal liability under any of the four theories outlined in *Lytle v. Doyle* and described in Section III.B.

Concerning Plaintiff's punitive damages claim against Southern Health Partners, it is unclear from the face of the Complaint whether Plaintiff seeks punitive damages under federal or state law. (ECF No. 6 ¶¶ 67–70.) However, it can be inferred from the language used by Plaintiff, as well as her argument in the Memorandum in Opposition, (ECF No. 27), that Plaintiff's punitive damages claim is made under N.C. Gen. Stat. § 1D-15.

Under N.C. Gen. Stat. § 1D-15(a), punitive damages are appropriate (1) "if the claimant proves that the defendant is liable for compensatory damages" and (2) that either fraud, malice, or willful or wanton conduct was present "related to the injury for which compensatory

damages were awarded." Further, under § 1D-15(c), punitive damages are not permitted when awarded "solely on the basis of vicarious liability for the acts or omissions of another." In the case of a corporation, punitive damages are appropriate "only if . . . the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c).

In Count 4 of the Complaint, Plaintiff alleges that the "officers, directors, or managers of [Southern Health Partners] . . . participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages in that similar acts of reckless indifference have incurred not only in other prisons and jails across the country, but actually in the Cabarrus County jail." (ECF No. 6 ¶ 69.) Even accepting all allegations laid out in the Complaint as true, Plaintiff has not alleged sufficient facts to show willful or wanton conduct on behalf of the officers, directors, or managers of Southern Health Partners. There is a dearth of factual allegations in the Complaint showing that a corporate officer, manager, or supervisor participated in or condoned any of the conduct of its employees at the Cabarrus County Jail. "[M]ere conclusory and speculative allegations" are insufficient to withstand dismissal. *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Similar to the § 1983 claim discussed above, Plaintiff's punitive damages claim against Southern Health Partners rests on a *respondeat superior* theory for the acts of employees like Nurse Carlton. (ECF No. 6 ¶¶ 47, 49; ECF No. 27 at 9.)

Indeed, the only Southern Health Partners employee that the Complaint explicitly alleges as exercising decision-making authority related to Hunter's medical care and as present throughout the events leading up to Hunter's death is Nurse Carlton—the only defendant who is not seeking dismissal of any of Plaintiff's claims. Accordingly, Plaintiff's Complaint

has not on its face stated a plausible claim for punitive damages against Southern Health Partners.  This claim must and will be dismissed.

### B. Karen Russell

Defendant Russell seeks to dismiss all claims against her.  (ECF No. 25 at 9.)  Russell argues that Plaintiff's claims do not contain any factual allegations implicating Russell that are sufficient to raise a right to relief.  (*Id.* at 9–10.)

With respect to Plaintiff's claims against Russell, the Complaint is less than a model of clarity.  It can be difficult, in places, to discern whether certain claims directed at all "Defendants" generally are meant to include allegations against just the healthcare providers employed by Southern Health Partners, just the employees of the Cabarrus County Sheriff's Department, or both.  Nevertheless, when the various counts are read against the backdrop of the Complaint's factual allegations, there are two potential claims against Russell.  Count 3 alleges a negligence claim, which sounds in medical malpractice under North Carolina law, (*id.* ¶¶ 52–65), and Count 4 alleges a claim for punitive damages, (*id.* ¶¶ 67–70).

As was the case with Defendant Auten above, it is unclear from Plaintiff's Complaint whether Russell was ever present at the Cabarrus County Jail, and whether she had any role at all in the events described in the Complaint.  Russell is mentioned by name in three places in the Complaint: once in the caption, once where Plaintiff identifies Russell as a physician's assistant employed by Southern Health Partners, (*id.* ¶ 4), and once where she is identified as a health care provider who owed a duty to Hunter, (*id.* ¶ 62).  In the Complaint, Plaintiff's state law claim for medical negligence is made against all Defendants collectively.  (*Id.* ¶¶ 53– 66.)  However, Plaintiff does not make any allegations supporting a medical malpractice claim against Russell.  Rather, Plaintiff recites the generally applicable standard of care and concludes

15

that *all* Defendants breached their duties to Hunter. There are no factual allegations contained within the Complaint that include Russell or that assert any conduct by Russell regarding the care provided to Hunter at Cabarrus County Jail.

The same can be said regarding Plaintiff's punitive damages claim against Russell. In the Complaint, Plaintiff's claim for punitive damages is made against all Defendants collectively. (*Id.* ¶¶ 67–70.) Plaintiff does not make any factual allegations supporting an award for compensatory, let alone punitive damages, against Russell. Accordingly, all claims against Russell must and will be dismissed.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' Partial Motion to Dismiss, (ECF No. 16), is **GRANTED** as to all Defendants joined in the motion; and there being no claims remaining as to Individual Defendants Jason Auten, A.M. Price, and Michael Rogers, they are hereby dismissed from this lawsuit.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss, (ECF No. 24), is **GRANTED** as to each Defendant joined in the motion; and there being no claim remaining against Defendant Karen Russell, she is hereby dismissed from this lawsuit.

This, the 1st day of September 2022.

/s/ Loretta C. Biggs
United States District Judge